UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| COURTNEY L. KESSLER, | Case No. 3:24-cv-00308 |
| Plaintiff, | District Judge Thomas M. Rose |
| vs. | Magistrate Judge Caroline H. Gentry |
| WALMART INC., | |
| Defendant. | |

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge to consider whether the Court has subject-matter jurisdiction over this removed action. *See* Fed. R. Civ. P. 12(h)(3). After reviewing Defendant Walmart Inc.'s Response (Doc. No. 8) to this Court's Order to Show Cause (Doc. No. 7), the undersigned concludes that Defendant has not met its burden of establishing that the amount-in-controversy requirement is met. The undersigned therefore **RECOMMENDS** that this matter be **REMANDED** to the Court of Common Pleas of Montgomery County, Ohio.

I. **BACKGROUND**

This dispute arose from injuries that Plaintiff Kessler allegedly sustained on October 8, 2023 while shopping at a Walmart store in Dayton, Ohio. (Complaint, Doc. No. 3 at PageID 20.) Plaintiff claims that she was injured when she slipped and fell because of "an oily substance on the floor." (*Id.*) Plaintiff filed this negligence action in the Montgomery County Common Pleas Court. (*Id.*) Plaintiff seeks damages from

Defendant "in an amount in excess of $25,000.00, plus interest, attorney fees and cost of this action." (*Id*. at PageID 21.) Defendant removed the lawsuit to this Court based upon diversity of citizenship under 28 U.S.C. § 1332. (Notice of Removal, Doc. No. 1.) After reviewing the Notice of Removal, the undersigned Magistrate Judge issued an Order to Show Cause (Doc. No. 7) as to why this action should not be remanded for lack of subject-matter jurisdiction.

## II.  LEGAL STANDARD

"[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute . . . , which is not to be expanded by judicial decree[.]" *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003) (internal citations omitted). This Court has a duty to review *sua sponte* whether subject matter jurisdiction exists in each case before it. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

If the Court's subject-matter jurisdiction is uncertain, then this Court must strictly construe the removal statutes and resolve all doubts in favor of remand. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). This rule "makes sense" because if the Court finds that it lacks jurisdiction at any point of the proceedings (including on appeal), then it must dismiss the case and nullify all proceedings up to that

point, "which serves no one's interests." *Total Quality Logistics, LLC v. Franklin*, No. 1:19-cv-266, 2020 U.S. Dist. LEXIS 155757, *8 (S.D. Ohio Aug. 27, 2020) (Cole, D.J.).

Diversity jurisdiction exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The amount in controversy is determined as of the date the complaint is filed. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

When the plaintiff specifies an amount of damages in the complaint and has a good-faith basis for doing so, the removing defendant can generally rely on that monetary demand to satisfy the amount-in-controversy requirement. 28 U.S.C. § 1446(c)(2). Such reliance is not permitted, however, if it appears to a legal certainty that damages cannot be recovered in that amount. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1937)).

If the plaintiff does not specify an amount of damages in excess of $75,000 in the complaint, then the defendant's notice of removal must include a plausible allegation that the amount-in-controversy requirement is met. 28 U.S.C. § 1446(c)(2)(A)(ii); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). This happens regularly in this Court because the Ohio Rules of Civil Procedure bar most plaintiffs from specifying an amount of damages in excess of $25,000. *See* Ohio R. Civ. P. 8(A)(2).

If no one questions the amount in controversy pled in the notice of removal, then the removing defendant need take no further action. If, however, "the plaintiff contests, or the court questions, the defendant's allegation" regarding the amount in controversy, then the removing defendant must prove by a preponderance of the evidence that it

3

exceeds $75,000. *Dart Cherokee*, 574 U.S. at 89 (citing 28 U.S.C. § 1446(c)(2)(B)). *Accord Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (holding that the party invoking a federal court's subject-matter jurisdiction bears "the burden of demonstrating ***by competent proof*** that the complete-diversity and amount-in-controversy requirements are met") (emphasis added).

The Court may rely on "reasonable inferences and deductions" when determining whether the amount-in-controversy requirement has been met. *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1269 (S.D. Fla. Jan. 24, 2020). Notably, the Court is not "bound by the plaintiff's representations regarding" his or her estimate of the amount in controversy. *Id.*; *accord Graves v. Standard Ins. Co.*, No. 18-5449, 2019 U.S. App. LEXIS 27526, *8-9 (6th Cir. Sept. 11, 2019) ("Despite Graves' statement under oath that the value of her claims was 'at least $883,000,' we conclude that the district court clearly erred in finding that the amount in controversy more likely than not was more than $75,000 at the time of removal").

III. ANALYSIS

Defendant argues that the amount-in-controversy requirement is met because Plaintiff's attorney refused to stipulate that her damages do not exceed $75,000. (Response, Doc. No. 8 at PageID 39.) Defendant also argues that information provided by Plaintiff's counsel about Plaintiff's injuries and claimed damages, combined with Plaintiff's refusal to stipulate, "prove[s] that it is *more likely than not* that the amount in controversy exceeds the $75,000.00 threshold needed for removal to Federal Court." (*Id.* at PageID 39-40 (citation omitted).) For the reasons explained below, these arguments are

4

not well-taken. Therefore, the undersigned recommends that this matter be remanded to state court.

Defendant argues that Plaintiff's refusal to stipulate that her damages are less than $75,000 constitutes "evidence that [she] is seeking an amount in excess of the federal court's jurisdictional requirement." (Response, Doc. No. 8 at PageID 38 (citing *Del Real v. HealthSouth Corp.*, 171 F. Supp. 2d 1041, 1043 (D. Ariz. Nov. 5, 2001).) It is true that a plaintiff's refusal to agree to such a stipulation can give rise to "an inference" that the plaintiff "thinks his claims may be worth more than $75,000." *Halsey v. AGCO Corp.*, 755 F. App'x 524, 528 (6th Cir. 2018). But such an inference, by itself, is insufficient because the Court is not bound by a plaintiff's estimation of the amount of his damages when making this determination. *E.g.*, *Graves*, 2019 U.S. App. LEXIS 27526, at *8-9; *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1269 (S.D. Fla. Jan. 24, 2020) ("[T]he district court is not bound by the plaintiff's representations regarding its claim and may review the record for evidence relevant to the amount in controversy") (internal quotations and citations omitted).

Defendant cites a case from a district in another circuit to support its reliance upon Plaintiff's refusal to stipulate. (Response, Doc. No. 8 at PageID 38 (citing *Del Real*, 171 F. Supp. 2d at 1043).) But the facts in that case were quite different. The plaintiff in *Del Real* issued a demand letter that "establish[ed] that a reasonable severance package would include, among other things, one year's salary priced at $65,203 and payment of [the plaintiff's] continued health insurance under COBRA for at least eighteen months." *Id*. the court relied on that evidence, combined with the monetary damages of $32,797.96

5

listed in the complaint, to find that the jurisdictional amount was met. 171 F. Supp. 2d at 1042-43. The court noted that the plaintiff's refusal to stipulate was "another indication" that the plaintiff sought an amount over the jurisdictional requirement. *Id.* at 1043. No similar evidence or particularized factual allegations are present here.

Therefore, even accepting Defendant's proposed inference that Plaintiff believes that her damages exceed $75,000, this is "a case where the defendant provided no quantifiable evidence of damages—leaving the court with nothing but speculation." *Halsey*, 755 F. App'x at 528 (citing *Suwala v. Progressive Ins. Co.*, No. 2005-cv-135, 2005 U.S. Dist. LEXIS 21473, 2005 WL 2076490, *3 (E.D. Ky. Aug. 25, 2005) (remanding the case)). Accordingly, this argument is unavailing.

Defendant also argues that "information from Plaintiff's counsel" – in the form of a "description of the injury, diagnostic testing, allegations of multiple surgeries, post-surgical treatment and lost wages" – shows that the amount-in-controversy requirement is met. Although Defendant acknowledges that it has "not received discovery responses or full medical bills and records,"[1] it relies on this communication from Plaintiff's counsel to argue that the amount in controversy exceeds $75,000:

> [Plaintiff] tore ACL in her knee. After MRI diagnosed issue, she had an initial surgery to graft bone needed to hold the surgical anchor for the ultimate repair. The next surgery will be to harvest a tendon to graft onto the residual ACL and anchor the new ligament to the area from where it

---

[1] Defendant states: "While Plaintiff does not have medical billing records at this time, should the Court deem that review of these is necessary, Defendant requests that the Court's ruling be held in abeyance until such bills become available." (Response, Doc. No. 8 at PageID 39 n.1.) But the Sixth Circuit "has recognized a rule that the determination of federal jurisdiction in a diversity case is made as of the time of removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citation omitted). The Court will not hold the record open indefinitely—and thereby defer a decision on the existence of subject-matter jurisdiction—based on a mere possibility that future evidence may support Defendant's argument.

6

> tore loose. Not sure of past or future meds or how long [Plaintiff] will be off work for the future surgery but I will certainly be seeking in excess of $75,000.

(Response, Doc. No. 8 at PageID 38-39 (citing January 7, 2025 email from Plaintiff to Defendant, Exhibit 2, Doc. No. 8-3 at PageID 46).) Notably, however, Plaintiff's counsel was unable to provide any evidence to support this monetary demand:

> I do not have the bills at this point. We have very few records and do have Dr. Tatum records to show that [Plaintiff] followed up with her [primary care physician], Dr. Hollingsworth after she fell on October 8, 2023. She was referred for an MRI that was performed at Atrium Medical Center and found to have suffered a tear of her ACL graft that she had previously had in her left knee. [Plaintiff] then saw the orthopedist Dr[.] Tatum on October 19, 2023 with findings of instability in the knee and a diagnosis of a traumatic tear. Dr. Tatum advised that [Plaintiff] needed to have a surgery to graft bone onto the femur before there could be a reconstruction of the ACL. The bone graft surgery was on December 26, 2023 at Greater Dayton Surgery Center. [Plaintiff] then underwent PT from 12/28 through 2/1/2024 with a return to work of 2/26/2024. [Plaintiff] has been in a knee brace since the injury and continued in the brace through therapy and follow up exams with Dr. Tatum. [Plaintiff] could not afford to be off work again immediately and I believe she was engaged at the time of the fall with a wedding planned in October 2024. So, she was going to wait to schedule the ACL repair surgery after that time. Not sure of her current status but know that the repair surgery was being planned with the expectation of post-[operative physical therapy] and [eight] weeks off work.

(*Id.* at PageID 39 (citing January 15, 2025 Email from Plaintiff to Defendant, Exhibit 3, Doc. No. 8-4 at PageID 47).) Plaintiff's description of her injuries and reports of past and planned medical care do not, in and of themselves, provide a quantifiable amount of damages. Simply put, Defendant has not provided any evidence to quantify the value of the claimed injuries or treatment. Accordingly, it has not met its burden of proof.

Defendant further relies on the types of damages sought by Plaintiff—which include pain and suffering, and loss of ability to perform usual functions—to argue that

7

the amount-in-controversy requirement is satisfied. (Response, Doc. No. 8 at PageID 39-40.) Again, however, Defendant essentially urges the Court to rely on the *possibility* that Plaintiff's damages could reach the $75,000 threshold. Defendant has not cited jury verdicts or other evidence from which the Court could reasonably find that Plaintiff is likely to recover more than $75,000 in damages. Absent plausible allegations or evidence, the undersigned cannot find by a preponderance of the evidence that the amount-in-controversy requirement has been met. *See, e.g., Diaz v. Allstate Northbrook Indem. Co.*, No. 22-cv-705-MMA (WVG), 2022 U.S. Dist. LEXIS 159626, *15 (S.D. Cal. Sept. 2, 2022) (holding that plaintiff's complaint was not removable where noneconomic damages were only generally pled and omitted supporting details); *Casiano v. Wal-Mart Stores E., LP*, No. 2:24-cv-0005-SPC-NPM, 2024 U.S. Dist. LEXIS 61886, at *3 (M.D. Fla. Apr. 4, 2024) ("any suggestion that the jurisdictional amount would be met by the surgery was purely speculative at this time absent some quantifiable information about its cost").

## IV. CONCLUSION

For these reasons, the undersigned concludes that Defendant has not proven, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Moreover, if there is any doubt as to whether the Court has subject-matter jurisdiction—and the undersigned finds that there is ample doubt in this case—then the proper course of action is to remand the action to state court. *Brierly*, 184 F.3d at 534; *Total Quality Logistics, LLC*, 2020 U.S. Dist. LEXIS 155757, *8. Accordingly, the undersigned

8

recommends that this matter be remanded to the Court of Common Pleas of Montgomery County, Ohio.

**IT IS SO RECOMMENDED.**

                                              *s/ Caroline H. Gentry*
                                              Caroline H. Gentry
                                              United States Magistrate Judge

Procedure On Objections

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).